IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WENDI HOLTON,                          )
                                       )
                Plaintiff,             )        Case No. 05-6083-KI
                                       )
        vs.                            )        OPINION AND ORDER
                                       )
JO ANNE BARNHART,                      )
Commissioner of Social Security,       )
                                       )
                Defendant.             )


        Richard F. McGinty
        P. O. Box 12803
        Salem, Oregon  97309

                Attorney for Plaintiff

        Karin J. Immergut
        United States Attorney
        District of Oregon
        Neil J. Evans
        Assistant United States Attorney
        1000 S. W. Third Avenue, Suite 600
        Portland, Oregon  97204-2902


Page 1 - OPINION AND ORDER

David R. Johnson
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Wendi Holton brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g).  Holton was awarded supplemental security income benefits ("SSI") with an onset date of August 1, 1990.  After an anonymous report that Holton's mental functioning had allegedly improved, the Commissioner performed a continuing disability review and ceased Holton's disability status as of October 1, 2001.  Holton seeks judicial review of that decision.  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

Page 2 - OPINION AND ORDER

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a seven-step sequential evaluation process for determining if an individual's disability has ceased.  20 C.F.R. § 416.994(b)(5).  The review will cease and benefits will continue at any point that the Commissioner determines that the individual remains unable to engage in substantial gainful activity.  The steps are:  (1) whether the individual has an impairment which meets or equals the severity of a listed impairment; (2) whether there has been medical improvement; (3) whether the medical improvement is related to the ability to work; (4) if there has been no medical improvement, or if the medical improvement is not related to the ability to work, whether an exception to the medical improvement standards apply; (5) whether the individual has a severe impairment or combination of impairments; (6) whether the individual can do past relevant work; and (7) whether the individual can perform other work in the national economy in light of his or her age, education, and work experience.  Id.

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision." <u>Batson v. Barnhart</u>, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ reviewed the records of Holton's mental health providers but found them to be unsubstantiated and not reliable.  He found that Holton had a medical improvement in her mental health that was related to her ability to work, but still suffered from impairments of panic disorder with agoraphobia, anxiety disorder, post-traumatic stress type, bipolar disorder, dysthymic disorder, and dependent personality disorder, which are severe in combination. The ALJ gave little weight to the allegations of Holton and her partner, Jeffrey O'Hara.  The ALJ found that Holton had the mental residual functional capacity to perform simple repetitive tasks at a normal pace, not rushed, with no close public, co-worker or supervisory contact.  Based on testimony from a vocational expert, the ALJ concluded that Holton could work as a print materials distributor, office helper, credit authorizer, and foods wrapper.  Consequently, the ALJ found that Holton was no longer under a disability as of October 1, 2001.

## FACTS

Holton, who was 47 years old at the time of the ALJ's opinion, has a ninth grade education and no past relevant work.

Holton states that she is sad or depressed all of the time.  She suffers from phobias and at times is afraid to take her medication.  Holton states that she cannot stand a word against her, no matter how minor.  She believes she is worth nothing and no one can change her mind.  Holton claims to be truly fearful to go out alone without a caregiver.  She does not shop alone and has bad thoughts about everyone.  Holton suffers from several panic attacks a day and says she stays

home every day unless someone takes her to a doctor.  She claims to spend most of the day in her bedroom.  Holton admits to the abuse of alcohol and pain medication, which she explains allows her to be someone else for a while because the worry and fear are dulled.  She also used methamphetamine during the summer of 2003.  Holton states that she cannot keep a job because she feels a need to be home.

An anonymous report caused the Cooperative Disability Investigations Unit to investigate Holton for possible fraud.  The investigator noted that Holton had three traffic convictions between January 2000 and February 2001.  Three of Holton's neighbors told the investigator that when Holton drives the household's car, which one witness reported as frequent, she is often alone.  One neighbor reported that Holton and O'Hara recently rode a motorcycle to New York.  Holton admits that she traveled by plane to New York with her family but denies riding that far on a motorcycle.  She does state that she has taken shorter rides to campgrounds on the motorcycle.

The ALJ found that Holton's description of her symptoms and limitations was not entirely credible.  Holton does not challenge that finding.  On May 2, 2002, Holton submitted a long hand-written statement to the Social Security Administration.  In it, she stated:  "Yes, I do drink & abuse pain med ect & you sent me a drug & alcohol assesment I was not honest on it I was afraid you might send me some where for rehab or who knows you people have the power."  Tr. 114 (without correction).

**DISCUSSION**

I.    Waiver of Right to Representation

Holton contends that she did not waive her right to representation because she was

expressing her inability to obtain counsel rather than a desire to proceed without one.  Without

counsel present, Holton argues that the ALJ did not probe scrupulously into all relevant facts.

According to Holton, this led to several problems:  (1) the ALJ did not advise Holton of her

rights at the hearing; (2) Holton was not allowed to see her file; and (3) the ALJ did not obtain

evidence which might have been favorable to Holton, including a videotape made by the

Disability Investigations Unit.

> [W]here the claimant is not represented, it is incumbent upon the ALJ to
> scrupulously and conscientiously probe into, inquire of, and explore for all the
> relevant facts.  He must be especially diligent in ensuring that favorable as well as
> unfavorable facts and circumstances are elicited.
>
> When the heavy burden imposed by *Cox* is not met, and the claimant may
> have been prejudiced, the interests of justice demand that the case be remanded.
> An adequate hearing record is indispensable because a reviewing court may
> consider only the Secretary's final decision, the evidence in the administrative
> transcript on which the decision was based, and the pleadings.  The duty to
> provide an adequate record is of extraordinary importance when a person once
> found eligible for S.S.I. benefits may be in danger of losing them because he is too
> ill to act in his own best interests.  See DeLorme v. Sullivan, 924 F.2d 841, 849
> (9th Cir. 1991) ("In cases of mental impairments, this duty is especially
> important.") . . . .

Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1992) (internal quotations and citations

omitted).  In Higbee, the court remanded a case in which an unrepresented person, diagnosed as a

paranoid schizophrenic, came to the hearing alone, provided documents with multiple addresses,

and finally refused to tell the ALJ where he lived after first giving inconsistent statements about

living in the United States or in Mexico.  After finding that the record was inadequate to

determine the claimant's residence, the court concluded that the ALJ should have continued the hearing to allow agency personnel time to investigate.  Alternatively, a break would have allowed the claimant time to have a change of heart or to bring a friend or social services provider who could supply the information.  Id. at 562.

Holton also relies on Vidal v. Harris, 637 F.2d 710 (9th Cir. 1981), in which the court remanded the case of a pro se claimant because the ALJ did not sufficiently protect his interests. Id. at 714.  The claimant, who had IQ test scores of 73 and 78, provided no physician's report detailing his physical problems caused by polio which left one leg weakened and 2 ½ inches shorter than the other, and whose reading ability was so limited it was doubtful that he could have understood the written notice of the right to representation at the hearing.  Id. at 711-14.

Although the standard here is the same as stated in Higbee and Vidal, the cases are distinguishable.  Holton does not suffer from mental retardation.  On the contrary, she submitted several long handwritten statements explaining her situation.

In the Notice of Hearing sent five weeks prior to the hearing, Holton was informed of several things:  (1) Holton could have a representative with her at the hearing; (2) the standards to be used to decide her case; (3) a vocational expert would testify; (4) Holton could object to the issues as stated in the Notice by the ALJ; (5) Holton could submit more evidence either before or at the hearing; (6) Holton could see her file on the date of the hearing or on an earlier date; (7) Holton could request a subpoena of a person or documents; (8) Holton would have a chance to testify; (9) Holton or her representative could submit documents, present and question witnesses, state her case, and present written statements about the facts and law; and (10) the ALJ would question Holton and any other witnesses under oath.

Page 7 - OPINION AND ORDER

There is no evidence to support a conclusion that Holton might not have understood these rights provided prior to the hearing.  There is also no evidence that Holton wished to see her file but was prevented from doing so or failed to understand that she could ask to see it.  Holton supplemented her file by providing an additional exhibit to the ALJ at the hearing.  There is also no single piece of evidence on which the decision hinged, as with the claimant's residence in <u>Higbee</u>, which could have been researched more thoroughly given additional time or representation for Holton.

When the ALJ discussed with Holton her right to representation, this colloquy occurred:

ALJ:  . . . And before we do proceed to the hearing I want to make sure you understand you have a right to have a representative assist you in these proceedings.  The representative can either be an attorney or nonattorney.  Some representatives will work for a contingency fee, that is a percentage of benefits that you may obtain.

CLMT:  Well, I would have like to have done that but I didn't have contingency to give anybody.

ALJ:  That's true on a cessation case, there wouldn't be any so –

CLMT:  Right, so I couldn't find anybody to do it.

ALJ:  Okay.  There's also some free representation through Legal Aide organizations –

CLMT:  I worked on that –

ALJ:  – if you qualify.

CLMT:  – too but they, they only take a certain amount and there wasn't amounts left for me.

ALJ:  Would you wish to proceed today or do you want to continue to try to find somebody to –

CLMT:  Well, it seems like a worthless endeavor.  If you don't have money then – well, you know, money makes the world go around.  That's just the way of it.

ALJ:  Well, I find that you have waived the right to an attorney at this point.  And, of course, you can obtain representation later if you feel you need to do that also.

Tr. 357-58.

The ALJ offered all possible suggestions but Holton had already tried the options and did not wish to look further.  I conclude that Holton knowingly waived her right to representation and the ALJ committed no error by continuing with the hearing.

I now turn to whether the ALJ scrupulously and conscientiously probed into, inquired of, and explored for all the relevant facts.  On January 12, 2004, a request was made to Poyama Counseling Services, where Holton received counseling over many years, for all of her updated records.  At the time of the hearing on January 27, 2004, however, Poyama had only provided an intake summary and a termination summary.  A longer statement by one of Holton's counselors, Nancy Ferrell, a Medical Source Statement completed by Ferrell, and Ferrell's treatment notes were not made available until September 17, 2004, six months after the ALJ's opinion.  The Appeals Council added the additional evidence to the record.  Although there is indication in the record that Ferrell was ill, causing Holton to transfer to a different counselor, Poyama could have explained the situation and asked the ALJ for additional time to provide the records.  The ALJ was left with the impression that Poyama did not have adequate treatment notes to support its providers' conclusions.  The ALJ did all that he could here.

Holton also contends that the investigative videotape should have been made part of the record.  The Report of Investigation, which is part of the record, states in great detail what was

observed during each surveillance of Holton's home.  No surveillance showed Holton leaving the home alone.  The videotape would not have provided any additional information helpful to Holton.

I conclude that the ALJ scrupulously and conscientiously probed into, inquired of, and explored for all the relevant facts.  The hearing record is adequate.

II.    Due Process

Building further on the effect of lack of representation at the hearing, Holton argues that she was deprived of her right to due process.  She contends that she was not allowed to object to evidence or to cross examine witnesses.  In particular, Holton is concerned about the hearsay evidence contained in the anonymous letter, the Report of Investigation, which included statements from both investigators and three unidentified witnesses, and a note in the file about Holton taking a motorcycle trip to New York, which she denies.  Holton further objects that she was not allowed to cross examine O'Hara or the vocational expert and the ALJ did not obtain all relevant facts in his examination of them.

Hearsay evidence is allowed.  See 42 U.S.C. § 405(b)(1) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure").  The better question is whether hearsay evidence, when considered with the other evidence, provides substantial evidence to support the ALJ's conclusions.  Here, the Report of Investigation summarized statements from three of Holton's neighbors that Holton drives alone.  The three statements corroborate each other.  They are worthy of credence.

Page 10 - OPINION AND ORDER

The ALJ made the following comment about the anonymous letter:

As noted above, the continuing disability review in this matter arose from an anonymous tip that the claimant was significantly more mentally capable than she was reporting to the Social Security Administration. Standing alone this faceless report has very limited value. However, these allegations were investigated and substantially corroborated by the Cooperative Disability Investigations Unit.

Tr. 26-27. The ALJ correctly gave little credence to the anonymous letter until it was corroborated. He committed no error.

The important point about Holton's New York trip is that she left her home to travel cross-country with O'Hara, which she admits she did on an airplane. The mode of transportation is not important to the issues before the ALJ. Moreover, the ALJ noted Holton's denial of taking a motorcycle cross-country and instead relies on Holton's admission that she was a passenger on a motorcycle on a trip to a campground. The ALJ noted that this was "hardly suggestive of profound agoraphobia, forcing her to be a 'shut-in,' as she now claims." Tr. 27.

Holton was informed in writing prior to the hearing that she could present and question witnesses. She brought O'Hara with her. There is no evidence that she wished to cross examine O'Hara or the vocational expert but was not allowed to. The ALJ posed a second hypothetical to the vocational expert concerning a person who would miss three or four days of work per month. This is very typical of the hypotheticals asked by plaintiffs' attorneys in other cases based on testimony by the claimant or a doctor that the claimant would miss several days of work each month. The ALJ conducted an adequate examination.

Due process requires that a claimant receive meaningful notice and an opportunity to be heard before a claim for disability benefits may be denied. Udd v. Massanari, 245 F.3d 1096,

1099 (9th Cir. 2001). Holton received both. I conclude that Holton was not denied any process

that she was due.

III.    Testimony of the Treating Physician

Holton contends that the ALJ improperly rejected the opinion of her treating psychiatrist,

Dr. Robert Henry, a licensed psychologist at Poyama.

A summary of a telephone call, signed by Dr. Henry, stated:

> You indicated that it is your impression that she may be one of the most
> anxious and depressed clients with whom you have worked. Currently, she is off
> her medications and is not doing well. She is attempting to work with her
> physician to restart medications. She seems to have considerable difficulty getting
> up and taking care of her children, and wants to sleep much of the time. She has
> trouble relating to others, including her friend, Jeff. As far as you know, she
> engages in few social interactions outside of home. Your understanding is that, if
> she is with Jeff, she can shop, but that she rarely leaves home alone. You did not
> have any information specifically regarding the frequency of panic episodes and
> said that you are more aware of what you consider numbing anxiety.

Tr. 242.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81

F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician

because the person has a greater opportunity to know and observe the patient as an individual.

Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's

opinion is not contradicted by another physician, the ALJ may only reject it for clear and

convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the

opinion without providing specific and legitimate reasons supported by substantial evidence in

the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is

Page 12 - OPINION AND ORDER

insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Id. at 831.  Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."  Id. at 602 (internal quotation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings."  Batson, 359 F.3d at 1195.

The ALJ found Dr. Henry's opinion unsubstantiated and thus not reliable.  The ALJ first noted that despite being asked to do so on more than one occasion, Poyama failed to provide any meaningful treatment records, sending only an intake summary from August 1997, a termination summary[1] dated May 15, 2001, and letters from Peters-Reau and Ferrell, neither of which is an acceptable medical source, as discussed below.  The termination summary notes that Holton is more skilled in managing panic attacks, which have lessened, is more self-confident and assertive, but is having difficulty managing her anger.

The ALJ also relied on the opinion of the State Agency examining consultant that with treatment, Holton "possesses adequate intelligence, social skills, reasoning, attention, memory,

---

[1]  Apparently written when Holton changed to a new provider within Poyama due to the illness of the first provider.

and energy to perform any number of work-related tasks, as she does at home on a daily basis."
Tr. 222.  The ALJ's final reason was that there is ample reason to question Holton's credibility.
As stated above, Holton does not object to the credibility finding.

The Poyama records the ALJ had were minimal, including neither treatment notes nor results of psychological testing.  The ALJ was correct in finding that Dr. Henry's opinion was not adequately supported.  In addition, the opinion was apparently based on Holton's subjective complaints, as there is no evidence that it was based on anything else.  Those complaints were appropriately discredited.  Finally, Dr. Henry's opinion was contradicted by the State Agency examiner.

I conclude that the ALJ gave specific and legitimate reasons supported by substantial evidence in the record to reject the opinion of Dr. Henry.

IV.    <u>Lay Testimony</u>

Holton contends that the ALJ improperly rejected the testimony of her counselors at Poyama, Nancy Ferrell, L.C.S.W. and Connie Peters-Reau, L.P.C.

Because Ferrell, a licensed clinical social worker, and Peters-Reau, a licensed professional counselor, are not acceptable medical sources under 20 C.F.R. § 416.913(a), their testimony is analyzed as lay testimony under 20 C.F.R. § 416.913(d).

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  A medical diagnosis, however, is beyond the competence of lay witnesses.  <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

Page 14 - OPINION AND ORDER

As with Dr. Henry, the ALJ had a page-long opinion from each counselor along with the termination summary from Ferrell.  Peters-Reau stated that Holton's strongest motivation is not being left alone, that Holton had made very slight progress in reducing her anxiety and its effect, and that "[g]iven her [Holton's] past employment experience, and her present emotional sate [sic], I do not perceive her capable of maintaining a job outside the home at this time."  Tr. 243.  Ferrell stated that Holton is unable to work outside the home due to her extreme post traumatic stress disorder and panic disorder and that although Holton is intellectually capable, she has been unable to maintain a school or work schedule because of the disorders.

The ALJ noted that the counselors had provided no meaningful treatment records, that Ferrell's termination summary showed Holton with a much improved global assessment of functioning score and a progressing condition, and that the counselors were not acceptable medical sources.  Keeping in mind that the ALJ had no chart notes, he has given supportable reasons for rejecting the lay testimony.  I also note that the counselors did not explain the symptoms they observed but instead gave unsupported conclusions about Holton's work ability, with Peters-Reau even referring to Holton's prior work experience.

I now turn to the exhibits provided by Ferrell to the Appeals Council after the ALJ issued his ruling.  Tr 309-333.

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence.  Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).  The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits.  The case must be remanded to the ALJ for consideration of

Page 15 - OPINION AND ORDER

the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence.  Id.

The first problem with the additional evidence from Ferrell is that the chart notes all relate to Holton's condition after October 1, 2001, the date the ALJ found that her disability ceased.  The chart notes are from October 2002 through January 2004.  If Holton believes that this evidence shows that her condition worsened after October 1, 2001, she should file a new application.

Ferrell also provided an undated two-page report on Holton's condition.  Tr. 309-10.  It states that Holton is quite emotionally disabled, that Holton reports spending days in her bedroom, that Holton is hypervigilant when out in the world, that Holton reports not being able to go to the grocery store because of panic, that Holton often cancels appointments, that Ferrell has observed Holton's severe mood swings, and that Holton was unable to attend group therapy, community college, or job training at St. Vincent De Paul.  There is no mention of psychological testing.  There is no evidence that Ferrell's opinion is based on anything other than Holton's reports.  Holton was appropriately discredited by the ALJ, however, so her reports do not provide adequate evidence for Ferrell's opinion.  Finally, Ferrell completed a Medical Source Statement on September 17, 2004.  Although it shows Holton as having marked and extreme limitations, it was be based on Holton's reports and opined on her condition nearly three years after the date in question.  From the chart notes, Holton was dealing with O'Hara's legal problems during this period as well as the shooting of her son.  It is likely that her condition degraded.  Again, if Holton believes this evidence shows that her condition worsened, she should file a new application.

Page 16 - OPINION AND ORDER

I see no basis to remand the action to allow the ALJ to consider the new evidence.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____6th_____ day of April, 2006.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge